UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

FAROOQUE AHMED,                          )
                                         )
                Plaintiff,               )
                                         )
        v.                               )        No. 2:23-cv-00230-JRS-MG
                                         )
UNITED STATES OF AMERICA,                )
                                         )
                Defendant.               )

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT**

Farooque Ahmed, who is incarcerated by the Bureau of Prisons ("BOP"), brought this lawsuit against the United States under the Federal Tort Claims Act ("FTCA"). Mr. Ahmed alleges that when he was confined at the Federal Correctional Institution in Terre Haute, Indiana ("FCI Terre Haute"), he suffered physical injuries and emotional distress after he was handcuffed behind his back during an x-ray of his knees. Mr. Ahmed further alleges that medical staff at FCI Terre Haute were negligent in treating his injuries. The claims that are proceeding are Mr. Ahmed's claims of battery, negligent and intentional infliction of emotional distress, and medical malpractice. The United States seeks summary judgment on Mr. Ahmed's medical malpractice and intentional infliction of emotional distress claims. For the reasons that follow, the motion for summary judgment is granted in part and denied in part.

**I.
Standard of Review**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment,

1

the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II.
## Expert Testimony

As an initial matter, the Court addresses the United States' objection to Mr. Ahmed's designation of Dr. Pragnaben Patel, who conducted a nerve conduction study on Mr. Ahmed in 2023, as an expert because Mr. Ahmed did not disclose Dr. Patel before filing his summary judgment response as required by Rule 26(a)(2)(A) of the Federal Rules of Civil Procedure. Under this Rule, generally, if the witness is "retained or specifically employed to provide expert testimony," the witness must provide a written report. Fed. R. Civ. P. 26(a)(2)(B). If the witness was not specifically retained to provide expert testimony and therefore is not required to provide

2

a written report, the party still must disclose the expected subject matter of the witness's testimony and "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C). "A party's failure to disclose an expert witness generally results in an exclusion of the evidence unless the nondisclosure was justified or harmless." *Gonzalez v. Rodgers*, No. 2:09-CV-225-JTM-PRC, 2011 WL 5040673, at *6 (N.D. Ind. Oct. 24, 2011). This determination is left to the Court's discretion. *Id.* (citing *Westefer v. Snyder*, 422 F.3d 570, 585 n. 21 (7th Cir. 2025)). The Court considers:

> (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date.

*Id.*

Here, the prejudice to the United States in the failure to disclose Dr. Patel as an expert is minimal. The United States argues that, without disclosure, counsel was not able to effectively prepare for Dr. Patel's deposition and could only cross-examine, but not directly examine, her. But a review of the deposition reveals that defense counsel was able to thoroughly question Dr. Patel, and specifically questioned her regarding her conclusions about the cause of Mr. Ahmed's injuries. Dkt. 114-2 at 9-12. In fact, the United States devotes much of the reply in support of the motion for summary judgment to Dr. Patel's testimony, including testimony elicited on cross-examination. Dkt. 118 at 7-11. In these circumstances, there appears to be little prejudice to the United States from the non-disclosure and the United States appears to have been able to cure it. Next, the United States has identified no disruption to the trial, as a trial date has not yet been set. Finally, as the United States points out, Mr. Ahmed had ample opportunity to disclose Dr. Patel as an expert, and the United States even requested the resume of anyone Mr. Ahmed intended to call as an expert in this case, and Mr. Ahmed still did not make a timely expert disclosure. Nonetheless, although Mr.

Ahmed undisputedly did not identify Dr. Patel as an expert, the United States has not shown that this failure was done in bad faith. In these circumstances, the Court finds that the exclusion of Dr. Patel's testimony is not necessary.

**III.**
**Factual Background**

Because the United States has moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Khungar*, 985 F.3d at 572–73.

**A. Medical History**

At all relevant times, Mr. Ahmed was an inmate at FCI Terre Haute. Dkt. 103-4 at 1-2. He has had a history of tingling, numbness, and shaking in his hands and was diagnosed with carpal tunnel syndrome as early as November 8, 2018. Dkt. 103-7 at 1; dkt. 103-8 at 1; dkt. 103-5. Mr. Ahmed also has a history of several chronic health issues, including numbness and pain in various areas of his body, including his thigh, wrists, elbows, and shoulders. Dkt. 103-10 at 1; dkt. 103-9 at 1. Mr. Ahmed's medical history also includes diagnoses of cervical radiculopathy and polyneuropathy. Dkt. 103-6; dkt. 103-12 at 1. Cervical radiculopathy is caused by compression of a cervical nerve root. Symptoms include pain, abnormal sensations, and/or muscle weakness.[1] Polyneuropathy is a general term for peripheral nervous system disorders that impact nerve function in multiple areas of the body. Symptoms include pins-and-needles sensations and numbness.[2]

---

[1] Cleveland Clinic, *Cervical Radiculopathy (Pinched Nerve)*, https://my.clevelandclinic.org/health/diseases/22639-cervical-radiculopathy-pinched-nerve (last visited Feb. 26, 2026).
[2] *See Polyneuropathy,* Michael Rubin, MDCM, Merck Manual Consumer Version, March 2024, available at www.merckmanuals.com/home/brain-spinal-cord-and-nerve-disorders/polyneuropathy (last visited Feb. 26, 2026).

Mr. Ahmed was given braces in 2021 to treat his carpal tunnel syndrome. Dkt. 103-13 at 1. He noted during sick call visits in April of 2022 that he had been offered surgery but declined and decided to use braces. Dkt. 103-12. Then in October of 2023, he again declined surgery and decided to continue using braces. Dkt. 103-14.

**B. March 3, 2022 Incident**

On March 3, 2022, Officer Travis Weber handcuffed Mr. Ahmed to take him for an x-ray of his knees. Dkt. 103-1 at 47, 69. Mr. Ahmed asked not to be handcuffed behand his back because of his carpal tunnel syndrome. Dkt. 103-16 at 4. Officer Weber told Mr. Ahmed that he had to be handcuffed behind his back if he wanted to get an x-ray. Dkt. 103-1 at 38. Mr. Ahmed decided to proceed with the x-ray and Officer Weber handcuffed him tightly behind his back. Dkt. 103-16 at 4. Mr. Ahmed notified Officer Weber that the handcuffs hurt his wrists, but Officer Weber refused to re-cuff Mr. Ahmed in the front and did not loosen the cuffs. *Id.*

Once in the x-ray room, Mr. Ahmed was placed in an uncomfortable chair still handcuffed behind his back. Dkt. 114-1 at 2. Officers then tipped the chair onto its two back legs, placing his weight onto his handcuffed wrists and hands. *Id.* Mr. Ahmed told Officer Weber he was in extreme pain, but he ignored Mr. Ahmed's complaints and Mr. Ahmed was forced to lay with his weight on his hands during the time the x-ray was being taken. *Id.* After the x-ray, Mr. Ahmed was in pain, had numbness and handcuff marks on his hands, and his right hand was shaking. *Id.* Mr. Ahmed tried to show Officer Weber his trembling hands, but Officer Weber ignored his requests for help and transported him back to his cell when the x-ray was over. Dkt. 103-16 at 4. There is no designated evidence that Mr. Ahmed received any medical care for his alleged injuries after this incident.

### C. Medical Care

In July 2022, Mr. Ahmed saw BOP medical staff for an injury to his right hand he incurred by jamming it in his bunk, and which caused pain and swelling. Dkt. 103-1 at 90-91. On August 16, 2022, Mr. Ahmed saw BOP medical staff because the middle fingers of his right hand were swollen and he was still having arthritis pain. *Id.* at 98.

Mr. Ahmed saw Dr. Patel at Union Hospital on April 21, 2023, and had an EMG and nerve conduction study, which showed "moderate right carpal tunnel syndrome and mild right ulnar nerve compression at the elbow." Dkt. 103-19 at 2. Dr. Patel determined that Mr. Ahmed's nerve injuries stemmed from his wrist, not higher up in the arm (like the elbow or shoulder). Dkt. 114-2 at 8 (Patel Dep. at 29). According to Dr. Patel, flexion or extension of the wrists—bending the wrists in or out—would increase nerve compression, nerve damage, and pain. *Id.* at 6 (Patel Dep. at 19). She also testified that adding weight to flexed or extended wrists would only further increase the compression, damage, and pain. *Id.* at 9 (Patel Dep. at 31). Based on Mr. Ahmed's statements and her examination and testing, Dr. Patel concluded that the x-ray incident "caused [Mr. Ahmed's] symptoms." *Id.* at 10 (Patel Dep. at 35). Dr. Patel went on to testify, however, that she could not say what caused the results of Mr. Ahmed's April 2023 EMG "because carpal tunnel syndrome is so common, and it occurs over a period of time…." *Id.* (Patel Dep. at 35-36).

The United States has presented the expert testimony of Dr. Jaron Tilghman. Based on his review of Mr. Ahmed's medical care, Dr. Tilghman concluded: Based upon the chronicity of the claimant's symptoms, to a reasonable degree of medical certainty, it is more likely than not that the claimant's symptoms do not differ from those that would result from the routine progression of carpal tunnel syndrome, independent of any acute stress or trauma such as that alleged in this case.

The claimant has received care for his nerve/hand complaints consistent with the standard of care. Among other things, he received wrist splints in an effort to mitigate his symptoms, although those splints failed to relieve his complaints of numbness and tingling in his right hand. Claimant's medical records reflect that he has also been offered carpal tunnel release surgery, but that he has yet to accept that offer.

Dkt. 103-20 at 8.

## IV.
## Discussion

The United States seeks summary judgment on Mr. Ahmed's battery, medical malpractice, and intentional infliction of emotional distress claims. Because the FTCA incorporates the substantive law of the state where the allegedly tortious act or omission occurred, the Court discusses the applicable Indiana law below. *Midwest Knitting Mills, Inc. v. United States*, 950 F.2d 1295, 1297 (7th Cir. 1991); 28 U.S.C. § 1346(b)(1).

### A. Causation[3]

First, the United States argues that Mr. Ahmed has a history of carpal tunnel syndrome, and he cannot show that Officer Weber's act of handcuffing his hands behind his back for the x-ray caused him further nerve damage.

"For a plaintiff to carry his burden of proof on causation, he must present evidence of probative value based on facts, or inferences to be drawn from the facts, establishing both that the wrongful act was a cause in fact of the occurrence and that the occurrence was a cause in fact of his injury." *Smith v. Beaty*, 639 N.E.2d 1029, 1033 (Ind. Ct. App. 1994). The plaintiff may not rely on "evidence based merely upon supposition or speculation." *Id.* at 1033–34. Thus, an opinion that lacks reasonable probability on its own is not enough to support a verdict, but "an expert's

---

[3] The United States describes this claim as Mr. Ahmed's negligence claim, because the United States argues that Officer Weber's acts did not cause his injuries, the Court understands the United States to be addressing his battery claim here.

7

opinion that something is 'possible' or 'could have been' may be sufficient to sustain a verdict or award" when rendered in conjunction with other, probative evidence establishing the material factual question to be proved. *Id.*

Here, the United States argues that because Dr. Patel testified that Mr. Ahmed's injuries could have been caused by being handcuffed behind the back for the x-ray, but later stated she could not say what caused the results of the EMG, Mr. Ahmed has not designated evidence that shows that Officer Weber caused his injuries. But Mr. Ahmed testified that his hands started to hurt and shake after the incident and Dr. Patel testified that, based on her review and Mr. Ahmed's report, the incident caused his symptoms, there is some evidence that would allow a jury to conclude as much. For example, the plaintiff in *Smith* was injured after the van he was driving rolled over and then was hit by a semi-truck. Although his designated expert could not conclude to a reasonable degree of certainty which of these two events caused his injuries, the Indiana Court of Appeals held such an expert opinion was not essential to establish causation. *Id.* at 1034. The court stated that "an expert's opinion that something is 'possible' or 'could have been' may be sufficient to sustain a verdict or award" when rendered in conjunction with other, probative evidence establishing the material factual question to be proved. *Id.* Because the plaintiff testified that he felt significant pain after the impact with the semi and the expert testified that a person would experience such pain after such an impact, he had carried his burden of proof on his negligence claim.

Because there is a question of fact regarding whether Officer Weber's acts exacerbated Mr. Ahmed's carpal tunnel syndrome, the United States is not entitled to summary judgment on Mr. Ahmed's negligence claim. *See Renner v. Shepard-Bazant*, 172 N.E.3d 1208, 1218 (Ind. 2021) (plaintiff can still recover if accident at issue aggravated a pre-existing condition).

**B. Medical Malpractice**

Next, the United States argues that because Mr. Ahmed has not presented expert testimony that the medical care provided him did not meet the standard of care, it is entitled to summary judgment. In a medical malpractice case, to show a breach of duty, "expert medical testimony is usually required to determine whether a physician's conduct fell below the applicable standard of care." *Bader v. Johnson*, 732 N.E.2d 1212, 1217-18 (Ind. 2000); *see also Musser v. Gentiva Health Servs.*, 356 F.3d 751, 753 (7th Cir. 2004) ("[U]nder Indiana law, a prima facie case in medical malpractice cannot be established without expert medical testimony.").

Mr. Ahmed alleges that his medical treatment at FCI Terre Haute fell below the standard of care because medical staff did not timely refer him to a hand and wrist specialist. Dr. Tilghman's expert report concludes that the medical care provided by the staff at FCI Terre Haute for Mr. Ahmed's condition did not fall below the standard of care. 103-20 at 8. As Dr. Tilghman explained, Mr. Ahmed has been given wrist splints and has declined surgery. *Id.* Dr. Patel testified at her deposition that she diagnosed axonal degeneration, and that surgery is recommended for this condition. Dkt. 114-2 at 9 (Patel Dep. at 30). Mr. Ahmed concludes therefore that the failure to send him to a specialist for a year after his March 2022 injury amounted to medical malpractice. This argument suffers from two deficiencies. First, Dr. Patel does not provide an opinion regarding whether the care Mr. Ahmed received met the standard of care – and indeed such opinion might fall outside her scope of expert testimony related to her treatment of Mr. Ahmed. *See Anderson v. Procter & Gamble*, No. 119CV04531JRSDLP, 2021 WL 1061197, at *2 (S.D. Ind. Mar. 19, 2021) ("treating medical professionals' testimony must not…exceed the scope of observations made during treatment"). In addition, it is undisputed that Mr. Ahmed declined surgery, both shortly after the incident and again more than a year later. Dkt. 103-12; dkt. 103-14. Without evidence

9

that Mr. Ahmed would have accepted surgery, no reasonable jury could conclude that medical staff at FCI Terre Haute were negligent because he has not had surgery.

Because there is no evidence from which a jury could support Mr. Ahmed's medical malpractice claim, the United States is entitled to summary judgment on this claim.

### C. Intentional Infliction of Emotional Distress

In Indiana, to succeed on a claim of intentional infliction of emotional distress, Mr. Ahmed must show that the United States (1) engaged in extreme and outrageous conduct that (2) intentionally or recklessly (3) caused (4) severe emotional distress to him. *Miller v. Cent. Indiana Cmty. Found., Inc.*, 11 N.E.3d 944, 959–60 (Ind. Ct. App. 2014). "Intentional infliction of emotional distress is found where conduct exceeds all bounds usually tolerated by a decent society and causes mental distress of a very serious kind." *Id*. at 960. "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id*. (quoting *Bradley v. Hall*, 720 N.E.2d 747, 752–53 (Ind. Ct. App. 1999)).

Here, Mr. Ahmed alleges that Officer Weber painfully handcuffed him behind his back and forced him to put his weight on his hands for a few minutes so that he could undergo an x-ray. His battery claim on these facts is proceeding. But Mr. Ahmed has not designated evidence that Officer Weber's actions were "beyond all possible bounds of decency." *Miller*, 11 N.E.3d at 959. The United States is therefore entitled to summary judgment on this claim.

### IV.
### Conclusion

The United States' motion for summary judgment, dkt. [103], is **granted in part and denied in part**. The medical malpractice and intentional infliction of emotional distress claims are **dismissed**. No partial final judgment shall issue as to these claims.

10

The magistrate judge is asked to hold a settlement conference.

**IT IS SO ORDERED.**

Date: ___6/22/2026___

JAMES R. SWEENEY II, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distribution:

FAROOQUE AHMED
77315-083
ALLENWOOD - MEDIUM FCI
ALLENWOOD MEDIUM FEDERAL CORRECTIONAL INSTITUTION
Inmate Mail/Parcels
P.O. BOX 2000
WHITE DEER, PA 17887

Manuel Herceg
TAFT STETTINIUS & HOLLISTER LLP (Indianapolis)
mherceg@taftlaw.com

Joi Kamper
DOJ-USAO
joi.kamper@usdoj.gov

Joseph Mitchell Tanner
TAFT STETTINIUS & HOLLISTER LLP (Indianapolis)
mtanner@taftlaw.com