UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| FAROOQUE AHMED, Plaintiff, | ) | |
| v. | ) | No. 2:23-cv-00230-JRS-MG |
| UNITED STATES OF AMERICA, Defendant. | ) | |

**Findings of Fact and Conclusions of Law**

Farooque Ahmed, who is incarcerated by the Bureau of Prisons ("BOP"), brought this case against the United States under the Federal Tort Claims Act ("FTCA"). Mr. Ahmed alleges that when he was confined at the Federal Correctional Institution in Terre Haute, Indiana ("FCI Terre Haute"), he suffered physical injuries and emotional distress after he was handcuffed behind his back during an x-ray of his knees. After the Court's ruling on the defendant's motion for partial summary judgment, Mr. Ahmed's battery and negligent infliction of emotional distress claims remain.

The Court conducted a bench trial on August 31, 2026, to resolve these claims. Mr. Ahmed was present by video and by counsel Manuel Herceg and Joseph Tanner. The United States was present by counsel Adriana Figueroa and Joi Kamper. Based on its evaluation of the evidence and testimony presented at the trial and the parties' arguments, the Court now issues the following findings of fact and conclusions of law.

**II. Findings of Fact[1]**

At all relevant times, Mr. Ahmed was an inmate at FCI Terre Haute. Dkt. 145 ¶ 1. From February 13, 2022, through March 14, 2022, Mr. Ahmed was housed in the Special Housing Unit ("SHU") at FCI Terre Haute. *Id.* ¶ 3.

Mr. Ahmed was diagnosed with carpal tunnel syndrome since at least November of 2018. *Id.* ¶ 2. BOP medical staff prescribed conservative treatment, including wrist braces and splints, but this did not fully alleviate his symptoms. Dkt. 161 at 111-12, 119. By 2021, surgery had been discussed, but based on his doctors' advice, Mr. Ahmed declined surgery in favor of continued conservative treatment. *Id.* at 19.

On March 3, 2022, Officer Travis Weber escorted Mr. Ahmed to an x-ray appointment in the SHU. Dkt. 145-1 ¶ 4; dkt. 161 at 66. Mr. Ahmed testified that, before Officer Weber handcuffed him, he told Officer Weber that he suffered from carpal tunnel syndrome and that handcuffing him behind his back would cause him pain. Dkt. 161 at 22. Mr. Ahmed asked to be cuffed in front, rather than in back. *Id.*at 22.

The decision whether an inmate can be handcuffed in front is made by medical personnel. *Id.* at 91, 120, 123. Dr. Elizabeth Trueblood, who was Mr. Ahmed's primary physician while he was at FCI Terre Haute, testified that Mr. Ahmed did not qualify for a front cuff medical exception. *Id.* at 105, 126-27. She also testified that Mr. Ahmed never asked her for such an exception, but if he had, she would have documented it. *Id.* at 132-33. She further explained that someone with carpal tunnel syndrome would not need a front cuff exception because carpal tunnel is a disease of compression and inflammation, so handcuffs behind the back are not tight enough to compress the nerve. *Id.* at 121.

---

[1] Any finding of fact that is more properly considered a conclusion of law is adopted as such. Similarly, any conclusion of law that is more properly considered a finding of fact is adopted as such.

To take Mr. Ahmed to his x-ray appointment, Officer Weber handcuffed Mr. Ahmed with his hands behind his back. *Id.* at 67. Officer Weber testified to his practice of double locking the cuffs to be sure that they would not get tighter. *Id.* He also testified that he confirmed that Mr. Ahmed did not have a medical exception tag on his door that would have exempted Mr. Ahmed from the requirement to handcuff him behind his back. *Id.* at 67-68, 90. Officer Weber therefore told Mr. Ahmed that if he wanted to have his x-ray, he must be handcuffed behind his back. *Id.* at 68. Officer Weber's role in the x-ray itself was to transport Mr. Ahmed there and provide security during the x-ray. *Id.* at 69-70.

Mary Turner, the x-ray tech who conducted the x-ray, does not recall this specific x-ray but testified that, generally, she and the inmate are the only people deciding how to position the inmate. *Id.* at 99. The correctional officer is not involved in positioning the inmate. *Id.* Officer Weber testified that Mr. Ahmed was seated in a chair for at least part of his x-ray and that Officer Weber Weber never tipped the chair back. *Id.* at 69-70. Officer Weber further testified that Mr. Ahmed may have leaned back, but that one couldn't lean back in the chair to the point of being horizontal. *Id.* at 70. Ms. Turner testified that an inmate getting a knee x-ray would not typically need to lean himself back in his chair. *Id.* at 99-100.

Mr. Ahmed testified that he was in a position with all of his weight on his right hand for three to five minutes. *Id.* at 24. He further testified that this caused him added wrist flexion and pain and that he called out in pain, but Officer Weber disregarded his complaints. *Id.* at 24. Officer Weber testified that, at some point, the x-ray tech seemed to be having trouble and decided it might be easier if Mr. Ahmed were handcuffed in front, so he did so, and the tech was able to complete

the x-ray. *Id.* at 70. Mr. Ahmed testified to the contrary, that Officer Weber never did re-cuff him in front. *Id.* at 25.

The x-ray lasted about five minutes. *Id.* at 24, 68-69. Mr. Ahmed testified that his hand started shaking after the x-ray and the x-ray technician told him to submit a request for sick call. *Id*. at 26. He also testified that he reported his pain to Officer Weber during the x-ray and that, after the x-ray, he tried to show his trembling hands to Officer Weber. *Id.* at 24-26. Fellow inmate Hosam Smadi testified that he observed Mr. Ahmed's expressions of pain. *Id.* at 43-45. Mr. Ahmed further testified that Officer Weber did not summon medical staff or adjust the restraints, and returned Mr. Ahmed to his cell. *Id.* at 25; 86. Officer Weber did not believe that Mr. Ahmed had a wrist injury. *Id.* at 86.

Mr. Ahmed testified that the pain and numbness in his hand have been worse since this x-ray. *Id.* at 27. Dr. Pragnaben Patel, a physiatrist who specializes in nerve conduction studies and chronic pain, saw Mr. Ahmed about a year later, in April of 2023. Dkt. 161 at 165. Mr. Ahmed reported to Dr. Patel pain and numbness in his right hand, among other symptoms. *Id.* at 155-56. She performed an electromyography ("EMG") and nerve conduction study, which showed moderate right carpal tunnel syndrome and mild right ulnar nerve compression. *Id.* at 160-62. Dr. Patel testified that increased compression on Mr. Ahmed's wrists through flexion or extension could cause increased compression, pain, and nerve damage. *Id.* at 164-65, 189. She testified that he told her that he had been handcuffed overnight when he started having symptoms. *Id.* at 159. She explained that Mr. Ahmed's reports of pain during and after the handcuffing incident were consistent with what she would expect. *Id.* at 160, 164-65. But Dr. Patel testified that if Mr. Ahmed was handcuffed and sitting on his right hand for five minutes, she would not expect the kind of symptoms Mr. Ahmed reported. *Id.* at 168. Defendant's expert, Dr. Jarron Tilghman, also testified

that the amount of time Mr. Ahmed was in handcuffs and had his weight on his wrist was not enough to cause the symptoms shown in his 2023 EMG. *Id.* at 177.

## III. Legal Conclusions

Mr. Ahmed brings claims under the FTCA for battery and negligent infliction of emotional distress. The FTCA incorporates the substantive law of the state where the acts took place. *Midwest Knitting Mills, Inc. v. United States*, 950 F.2d 1295, 1297 (7th Cir. 1991); *see* 28 U.S.C. § 1346(b)(1). Therefore, Indiana tort law applies to Mr. Ahmed's claims.

### A. Battery

A person commits the civil tort of battery if "'he acts intending to cause a harmful or offensive contact with the person of the other or third person, or an imminent apprehension of such contact, and (b) a harmful contact with the person of the other directly or indirectly results.'" *Barker v. McPherson*, No. 2:10-cv-314-WTL-WGH, 2015 WL 2093459, at 6 (S.D. Ind. May 4, 2015) (quoting *Singh v. Lyday*, 889 N.E.2d 342, 360 (Ind. Ct. App. 2008)). Under Indiana law, "[i]f an officer uses unnecessary or excessive force, the officer may commit the tort of battery." *Wilson v. Isaacs*, 929 N.E. 2d 200, 203 (Ind. 2010). "[B]attery is an intentional tort and requires the intent to cause a harmful or offensive contact with the plaintiff." *Clay v. Thorup*, No. 1:25-CV-00018-JPH-TAB, 2026 WL 2164378, at *3 (S.D. Ind. July 28, 2026) (citing cases).

Based on its evaluation of the evidence and testimony presented at the bench trial, including observations of the witnesses, the Court concludes as follows. At the time of the x-ray, Mr. Ahmed did not have a medical pass to be handcuffed in front, rather than behind his back, and had not requested one. Dkt. 161 at 132-33. If he had requested one, based on Dr. Trueblood's testimony, the Court concludes that he would not have received one because his carpal tunnel syndrome did not warrant it. *Id.* at 121. Next, the Court credits Officer Weber's testimony that he cuffed Mr.

Ahmed behind his back to take him to the x-ray and that it is his practice to double lock the cuffs to ensure that they did not tighten.[2] *Id.* 67. The Court further credits Officer Weber's testimony that he did not tip Mr. Ahmed's chair back for the x-ray and that it would not have been possible to lean Mr. Ahmed so far back that he would end up in a horizontal position. *Id.* at 70. Ms. Turner, the x-ray technician, testified that she did not recall this particular x-ray, but that correctional officers generally are not involved in positioning an inmate for an x-ray and that an inmate getting a knee x-ray would not typically need to lean back in the chair. *Id.* at 99-100. The Court does not credit Mr. Ahmed's contrary testimony. Notably, there is no record that Mr. Ahmed submitted a request for treatment of his hand immediately after this incident. Indeed, when Mr. Ahmed had a sick call visit in April of 2022, the provider noted that he "denie[d] recent injury to hands." Exhibit 13. And both Dr. Patel and Dr. Tilghman testified that leaning back on one's hands in the manner described by Mr. Ahmed for five minutes would not have caused the continuing symptoms of which he complains.

Mr. Ahmed argues that Officer Weber presented him with a false choice on the day of the x-ray – either submit to being handcuffed and x-rayed in a position that would injure his hand or decline the x-ray. But, even assuming that submitting to standard penological safety protocols presented a choice at all absent a medical order, Mr. Ahmed has not shown either that the x-ray was so urgent that he could not have declined it or that Officer Weber forced him to lean back during the x-ray. Thus, Mr. Ahmed has not shown by a preponderance of the evidence that, when Officer Weber handcuffed Mr. Ahmed for his x-ray, he performed any act with the intent to cause

[2] Mr. Ahmed suggests that Officer Weber's testimony is not credible because Officer Weber does not remember every aspect of this event. But the Court credits his testimony about his habitual practices and that he followed his practices during the event at issue.

him harm. The Court therefore concludes that Officer Weber did not commit battery on Mr. Ahmed.

**B. Negligent Infliction of Emotional Distress**

Under Indiana law, negligent infliction of emotional distress is a type of negligence. A plaintiff bringing a negligence claim must establish three elements: (1) a duty on the part of the defendant to conform his conduct to a standard of care arising from his relationship with the plaintiff, (2) a failure of the defendant to conform his conduct to the requisite standard of care required by the relationship, and (3) an injury to the plaintiff proximately caused by the breach. *Webb v. Jarvis*, 575 N.E.2d 992, 995 (Ind. 1991). Further, a claim for emotional distress cannot be based on the breach of a duty not to inflict emotional injury. Instead,

> actions seeking damages for emotional distress resulting from the negligence of another are permitted in two situations: where the plaintiff has (1) witnessed or come to the scene soon thereafter the death or severe injury of certain classes of relatives (i.e., the bystander rule) or (2) suffered a direct impact (i.e., the modified impact rule).

*Spangler v. Bechtel*, 958 N.E.2d 458, 466 (Ind. 2011).

First, Mr. Ahmed has not shown that Officer Weber breached a duty to him. Under 18 U.S.C. § 4042, the United States owes a duty to federal inmates. That statute provides: "The Bureau of Prisons … shall … (2) provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States…." Based on its evaluation of the testimony and evidence, the Court concludes that Officer Weber did not breach this duty. As the Court has explained, Mr. Ahmed had no medical exception to be handcuffed behind his back and such an exception was not warranted by his carpal tunnel syndrome. Further, the Court concludes that Officer Weber double locked Mr. Ahmed's handcuffs as was his practice and did not force him to lean back on his hands for the x-ray. Finally, the Court

concludes that nothing that happened during the x-ray caused Mr. Ahmed any lingering symptoms. The Court therefore concludes that Officer Weber did not commit the tort of negligent infliction of emotional distress.

**IV. Conclusion**

For the reasons discussed above, the Court finds in favor of the United States and against Mr. Ahmed on his battery and negligent infliction of emotional distress claims. The Court has already issued summary judgment on Mr. Ahmed's medical malpractice and intentional infliction of emotional distress claims.

Judgment consistent with this Order and the Court's summary judgment order, dkt. [126], shall now issue.

**IT IS SO ORDERED.**

Date: 09/24/2026

JAMES R. SWEENEY II, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distribution:

FAROOQUE AHMED
77315-083
SCHUYLKILL – FCI
SCHYYLKILL FEDERAL CORRECTIONAL INSTITUTION
Inmate Mail/Parcels
P.O. BOX 759
MINERSVILLE, PA 17954

All Electronically Registered Counsel